IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID deMEDICIS, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:16-CV-05973 |
| CVS PHARMACY, INC, et al | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

Plaintiff David deMedecis brought this case because the Defendant made the unqualified claim, on the packaging of a product it marketed as Vitamin C drops, that the product is made in the United States, when, in fact, an essential ingredient, the Vitamin C itself, is sourced from a foreign country. Defendant's arguments inaccurately suggest that a consumer cannot be deceived. For example, Defendant suggests deceptive representations made in small type, 9-point font in this case, are not deceiving. (Doc. 19 at 3); and Defendant further insinuates that when a consumer acts quickly to vindicate his rights and retains counsel with knowledge about the subject of the lawsuit—the vitamin industry's deceptive country-of-origin labeling practices – such consumer must not have been deceived. (Id.) Defendants' motion to dismiss is long on unfounded intimations like these but devoid of any reasons to dismiss this case. Because Plaintiff has stated a claim in all counts, the motion to dismiss should be denied in full.

## I. STANDARD OF REVIEW

When a defendant attempts to dismiss a complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences" in

the non-moving party's favor. Reynolds v. CB Sports Bar, Inc., 623 F.3d 1143, 1146 (7th Cir. 2010). The facts in the Complaint, construed in Plaintiffs' favor, with all reasonable inferences drawn in their favor, must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim is facially plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Aliano v. WhistlePig, LLC, 2015 WL 2399354 at *2 (N.D. Ill. May 18, 2015) (quoting Iqbal, 556 U.S. at 678). This inference can be drawn even where the plaintiff provides "only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests . . . ." Reger Development, LLC v. National City Bank, 592 F.3d 759, 764 (7th Cir. 2010). The Seventh Circuit has specifically stated that the Supreme Court decision in Twombly did not supplant this basic notice pleading standard. Tamayo v. Blagojevich, 526 F.3d 1074 (7th Cir. 2008).

Rule 9(b) of the Federal Rules of Civil Procedure does not change the standard a Court follows in dealing with a motion to dismiss. Under this standard, courts still "take the plaintiff's allegations as true and draw all reasonable inference in the plaintiff's favor." U.S. v. Sanford-Brown, Ltd., 788 F.3d 696, 704 (7th Cir. 2015) (citing Tricontinental Indus. Ltd., v. PricewaterhouseCoopers, LLP, 475 F.3d 824, 833 (7th Cir. 2007). Rule 9(b) does require the plaintiff "to state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc. 9(b). "In the Seventh Circuit, a plaintiff who provides a 'general outline of the fraud scheme' sufficient to 'reasonably notify the defendants of their purported role' in the fraud satisfies Rule 9(b)." Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 237 F.R.D. 173, 175 (N.D. Ill. 2006) (quoting Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1020 (7th Cir. 1992)).

## II. STATEMENT OF FACTS

The Court must apply this standard to the numerous factual and legal allegations presented in the First Amended Complaint. Plaintiff David deMedicis is an unsophisticated consumer who lives in Chicago. Am. Cmplt. at ¶ 5, 15. On multiple occasions, beginning in November of 2015, Mr. deMedicis purchased Defendants' vitamins at a CVS store in Cook County, Illinois. Id. at ¶ 11. He purchased the products for personal use, and in fact for personal ingestion into his body. Mr. deMedicis is a patriotic American who wants to support American manufacturers that operate in an honest manner. Id. at ¶ 17. Like many other Americans, he is willing to pay a premium for American-made goods. Id. Furthermore, Mr. deMedicis is a health-conscious individual who is concerned about the potential for poor-quality and adulterated ingredients, especially from China. For this reason, if American-made goods are unavailable, he prefers, and is willing to pay more for, goods made in North America and Western Europe rather than elsewhere in the world. Id.

Mr. deMedicis purchased CVS-branded Assorted Citrus Vitamin C Supplement Drops, which are distributed by CVS Pharmacy, Inc. Id. at ¶ 9. The back of the packaging (it is immaterial whether the writing on the package is called a "label" or not, despite Defendants' protestations) of the product Mr. deMedicis bought contained an unqualified claim that the product was made in the United States. Id. at ¶ 12-13. Despite this unqualified claim, the product contains both sodium ascorbate and Vitamin C in the form of ascorbic acid. Id. at ¶ 13. Neither of these products is produced commercially in the United States, meaning that the product necessarily contains foreign ingredients. Id. These ingredients are not only a "significant part" of the products, the Vitamin C is essential under the guidelines of the Federal Trade Commission. Id at ¶ 2. See also FTC Gorilla Glue Closing Letter (June 5, 2015) (Unqualified claim of US origin is deceptive because "key raw material in the product that gives it its adhesive quality is sourced overseas.")

3

The Amended Complaint alleges both that the "Defendants placed these deceptive labels on their packaging with the intention that Plaintiff and other consumers rely on them" and that Mr. deMedicis in fact saw and relied upon the representation in making his purchase. Am. Cmplt. at ¶ 15, 20. The Amended Complaint also notes that Mr. deMedicis intended his purchase of the product to "support American jobs, American manufacturing, and American companies that do things the right way in manufacturing products in the United States in such a way that they can legally make the 'Made in the U.S.A.' claim." Id. at ¶ 20. Next, it identifies a number of other products sold and marketed by Defendants that do not meet the legal standard to bear the made in the U.S.A. label, as well as products sold by Defendants that contain misleading and deceptive statements of geographic origin. Id. at ¶ 21. Furthermore, Defendants sell or market literally thousands of products, hundreds if not thousands of which contain vitamins, and many of which are CVS-branded products. Id. at ¶ 22. Because of Defendants' deceptive practices, Plaintiff cannot know whether any or all of these products are mislabeled. Therefore, he is likely to be harmed in the future by Defendants' illegal acts.

### III. ARGUMENT

#### A. Plaintiff has Standing to pursue Injunctive Relief

Under the IDTPA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable." 815 ILCS 510/3. In order to state a claim for injunctive relief under the IDTPA, a plaintiff must simply "plead a factual basis for future harm." Kljajich v. Whirlpool Corp., 2015 WL 8481973 at *3-4 (N.D. Ill. Dec. 10 2015) (citing Popp v. Cash Station, Inc., 613 N.E.2d 1150, 1157 (Ill. App. Ct. 1992) ("the consumer must allege facts which would indicate that he is likely to be damaged in the future.") In other words, the fact that a plaintiff was harmed in the past is not enough, he must allege a

4

likelihood that the harm will happen again. Here, Mr. deMedicis does not attempt to base his claim for injunctive relief on the past harm. Rather, it is based on the following factual allegations in the Amended Complaint:

> The Plaintiff and the Class continue to be injured as the Defendants' products continue to be sold to unwitting customers. Furthermore, Defendants sell numerous store-branded items over a wide variety of products. Unlike many consumer class actions, Plaintiff simply cannot know whether a specific item that Defendants have labeled is made in the U.S.A. contains foreign-sourced ingredients. Therefore, Plaintiff is likely to be harmed in the future by one of the myriad of CVS-branded products sold in its stores and erroneously labeled as made in the U.S.A. Plaintiff and the class cannot know which of Defendants' many products labeled "Made in the U.S.A." actually contain foreign ingredients.

Am. Cmplt. ¶ 22.

CVS claims that Mr. deMedicis cannot be harmed in the future because he now knows of its deceptive practices. This is a common refrain from Defendants who wish to keep deceiving other customers. See Reid v. Unilever U.S., Inc., 964 F.Supp. 2d 893, 918 (N.D. Ill. 2013) ("Armed with that knowledge, she can avoid using the Hair Treatment in the future.") It is fundamentally against the purposes of consumer protection legislation to allow companies to continue to deceive other consumers because the only consumer who has figured out the deception can no longer be harmed. However, in this case, this anti-consumer rule does not even help the Defendants, because it is clearly based on the consumer's knowledge. In this case, Plaintiff's only knowledge is about one of many ingredients, Vitamin C, in Defendants' vitamin products. He believes that other vitamins may also be sourced outside the United States, but, as he states in the complaint, he cannot be certain whether any of the labels on Defendants' huge variety of products are accurate or not. Therefore, he is simply not armed with the kind of knowledge that will prevent future harm, and injunctive relief is appropriate.

**B. The Amended Complaint States a Claim under the ICFA Both Rule 12(b)(6) and Rule 9(b)**

The gravamen of Plaintiffs' claims in this case rests on a simple premise. Defendants made a false representation on its product, in violation of an established legal standard. Plaintiff relied on that representation in purchasing the product. Because the representation was false, Plaintiff did not get what he paid for. In evaluating a motion to dismiss, the Court must take the facts alleged by the Plaintiffs as true, and the Complaint must simply include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). In doing so, "[a] plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds on which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008) (quoting Lang v. TCF Nat'l Bank, 249 Fed. Appx. 464, 466-67 (7th Cir. 2007)). The question before this Court, therefore, is whether it is plausible that the CVS products at issue actually did contain foreign-sourced Vitamin C and CVS labeled them as made in the USA anyway, thereby deceiving Plaintiff and other consumers. Plaintiffs allege more than enough factual detail to make this conclusion plausible.

As defined by the Illinois Supreme Court, the elements of a claim under the Illinois Consumer Fraud Act ("ICFA") are "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." De Bouse v. Bayer, 922 N.E. 2d 309, 313 (Ill. 2009). Beyond considering the elements of the ICFA, the Court should also be mindful of the purposes of the legislation. The Seventh Circuit has noted that "Illinois courts have repeatedly stressed the 'broad protective philosophy' of this legislation." Thacker v. Menard Inc., 105 F.3d 382, 386 (7th Cir. 1996) (citing

6

American Buyers Club of Mt. Vernon Illinois, Inc., 594 N.E. 2d 1370, 1373 (Ill. App. 1977); Duran v. Leslie Oldsmobile, Inc., 594 N.E. 2d 1355, 1361 (Ill. App. 1992)). "The ICFA may be employed 'to the utmost degree in eradicating all forms of deceptive and unfair business practices and to grant appropriate remedies to defrauded consumers.'" Tylka v. Gerber Products Co., 1999 WL 495126 (N.D. Ill. July 1, 1999) (quoting Warren v. LeMay, 491 N.E.2d 464, 472 (Ill. App. 1986)).

In this case Plaintiff has plausibly alleged that Defendants committed a deceptive or unfair act by representing that its Vitamin C Drops were made in the USA when they contained significant ingredients sourced from foreign countries. See 815 ILCS 410/2(a)(4) (making it a deceptive trade practice to use "deceptive representations or designation of geographic origin in connection with goods or services.") Plaintiffs also allege that the act is deceptive because the products do not meet the Federal Trade Commission's standards for bearing an unqualified made in the USA claim. Illinois law is clear that "consideration shall be given to the interpretations of the Federal Trade Commission" when determining whether a practice is unfair or deceptive. 815 ILCS 505/2; see also Robinson v. Toyota Motor Credit Corp., 775 N.E. 2d 951, 960 (Ill. 2002).

According to the FTC, a product bearing an unqualified made in the USA claim, such as that on Defendants' products, must be "all or virtually all" made in the United States. Federal Trade Commission, Complying with the Made in USA Standard, available at www.ftc.gov/system/files/ documents/plaint-language/bus03-complying-made-usa-standard.pdf (last accessed Jan. 6, 2016). "All or virtually all" means that all significant parts and processing that go into the product must be of U.S. origin. Id. That is, the product should contain no — or negligible — foreign content. Id. The FTC has also made it clear that the significance of foreign parts or ingredients is determined not only by their value or volume, but also by their importance

in the product's functionality. For example, the FTC found that it would be deceptive for a watch company to make an unqualified claim of American manufacture when the watch's movement was made in Switzerland:

> In this case, though the cost of a Swiss movement may be small relative to Niall's overall U.S. manufacturing costs, without a movement, a watch cannot tell time. Therefore, movements are essential to the function of a watch.

Federal Trade Commission Letter to Niall Luxury Goods, Nov. 20, 2015.

In this case, Vitamin C is likewise essential to the function of Vitamin C Drops. The FTC has made it clear that raw materials and ingredients, like manufactured parts, can be considered "essential" to a product. For example, the Commission found that "an unqualified 'Made in USA' claim for a glue or tape product may deceive consumers" if "a key raw material in the product that gives it its adhesive quality is sourced overseas." Federal Trade Commission Letter to Gorilla Glue Company, June 5, 2015. Just like the adhesive material in Gorilla Glue, it is the Vitamin C in Defendants' Vitamin C drops that make the product what it is, and give it the medicinal properties for which it is marketed. An unqualified representation of domestic origin when an essential ingredient is foreign-sourced is inherently deceptive under the Federal Trade Commission's guidelines.

Defendants disingenuously claim that Mr. deMedicis has not alleged that he was damaged, apparently because he did not use specific magic words while alleging that he relied on Defendants' misrepresentation in making his purchase. Defendants argue that the Complaint must contain the words "because" or "but for," but, drawing all inferences in the Plaintiff's favor, as the Court must, it is obvious from the face of the Complaint that Plaintiff alleges that Defendants' misrepresentation induced him to purchase the product. The Amended Complaint states that Plaintiff saw the misrepresentation and relied upon it in making his purchase. Am. Cmplt. at ¶ 15.

It also states that he paid more than the Vitamin C drops were worth and that he did not receive the benefit of his bargain in the transaction. Id. at ¶ 20. The only reasonable implication of these facts is that he would not have purchased the drops at the price being charged if he had known that Defendants were lying about the origin of their product. This allegation is sufficient to demonstrate damages. Jamison v. Summer Infant (USA), Inc., 778 F. Supp. 2d 900, 911-12 (N.D. Ill. 2011) ("In this case, Plaintiffs allege that they would not have purchased the [products], **or paid the purchase price** for the [products] had this information been provided.") (emphasis added). Plaintiff Davis deMedicis was damaged by Defendants' misrepresentation and he has adequately pled that damage. Furthermore, because Plaintiff has adequately pled damage, Defendants' arguments concerning unjust enrichment are unavailing and that count should "stand… with the related claim" and not be dismissed. Reid v. Unilever U.S., Inc. 964 F. Supp. 2d 893, 923 (N.D. Ill. 2013).

      The allegations of the Amended Complaint are also sufficient under Rule 9(b) because they clearly spell out the fraudulent scheme the Defendants engaged in, in a manner "sufficient to 'reasonably notify the defendants of their purported role' in the fraud." Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 237 F.R.D. 173, 175 (N.D. Ill. 2006) (quoting Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1020 (7th Cir. 1992)). The "scheme" alleged here could not be simpler: CVS knows that consumers prefer to buy American-made goods, but it is cheaper to source goods in China and other developing countries, so the Defendants simply lie about the origin of its goods to make a higher profit. In this particular case, the lie came in the form of a statement that the product was without qualification "Made in U.S.A." when it contained essential ingredients from a foreign source. The Seventh Circuit has also characterized Rule 9(b) as requiring Plaintiff to "describe the 'who, what, when, where, and how' of the fraud – 'the first

9

paragraph of any newspaper story." Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co., 631 F.3d 436, 441-42 (7th Cir. 2011) (quoting United States ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 854 (7th Cir. 2009)). "Yet, because courts and litigants often erroneously take an overly rigid view of the formulation, we have also observed that the requisite information—what gets included in that first paragraph—may vary on the facts of a given case." Id. at 442 (citing Emery v. Am. Gen. Fin., Inc, 134 F. 3d 1321, 1324 (7th Cir. 1996)). The Seventh Circuit has also stated that the requirements of Rule 9(b) are "relaxed" when the requisite information is in the hands of the Defendant. Emery, 134 F.3d at 1323.

In this case, the Amended Complaint answers all these questions. The who is CVS, which marketed the products with the misrepresentations on them. The what is the unqualified statement that the product is made in the USA. The where is on the packaging of the products. The when is, at the very least, throughout 2015 and until July 2, 2016. Additional information about when the statement was placed on the packaging is in the hands of the Defendant and could only be obtained through discovery. See Emery, 134 F.3d at 1323. The how of the fraud is that the product contains Vitamin C, an essential ingredient, from foreign sources. Plaintiffs have provided more than enough information to put Defendant on notice of the fraudulent scheme. See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 237 F.R.D. 173, 175 (N.D. Ill. 2006).

**C. Personal Jurisdiction and Standing Exist for Plaintiffs to Bring Count IV in Illinois.**

Plaintiff seeks to bring claims on behalf of a class that includes those who suffered identical injury under the functionally identical laws of other states. (Doc. 16 at ¶¶ 47-48). Plaintiff specifically chose California, Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington not only because Plaintiff's counsel believes that these laws were similar to the point of being functionally identical in this case, but because the Seventh Circuit recently affirmed

certification of a class consisting of consumers in all of these states. Mullins v. Direct Digital, LLC, 795 F.3d 654, 658 (7th Cir. 2015) (affirming Mullins v. Direct Digital, LLC, 2014 WL 5461903 (N.D. Ill., Sept. 30, 2014) (certifying a class that included all states at issue here as well as Massachusetts)).

Defendants make no attempt whatsoever to distinguish Mullins, despite the fact that Plaintiffs referenced it in the Complaint. (Doc. 16 at ¶ 30). Defendant argues that Plaintiff is attempting to assert a claim for himself under these related laws, but the Amended Complaint makes it clear that this claim is only brought on a class basis. Defendant's attempt to dismiss this Count for lack of personal jurisdiction is likewise unavailing. Although Defendant is correct that it is not subject to general personal jurisdiction in Illinois, it is subject to specific personal jurisdiction for all the claims brought in this lawsuit. The question is not whether any members of the class in the states other than Illinois have minimum contacts with Illinois, it is solely focused on whether the Defendant has such contacts. "[T]he central concern of the inquiry" into whether personal jurisdiction exists is "the relationship among the defendant, the forum, and the litigation." Daimler AG v. Bauman, 134 S.Ct. 746, 754 (2014) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).

The relationship among Defendants, Illinois, and the claims in this lawsuit is constitutionally sufficient for an Illinois court to exercise jurisdiction over this whole case. Several recent cases from the Eastern District of Missouri have faced the issue of the same claims being brought from multiple states. Clark v. Pfizer, Inc., 2015 WL 4648019 (E.D. Mo. Aug. 5, 2015); Bradshaw v. Mentor Worldwide, LLC, 2015 WL 3545192 (E. D. Mo. Jun. 4, 2015); Gracey v. Janssen Pharmaceuticals, Inc., 2015 WL 2066242 (E.D. Mo. May 4, 2015); Parker v. Pfizer Inc., 2015 WL 3971169 (E.D. Mo. Jun. 30, 2015). In each of these cases, plaintiffs in multiple states

were harmed by the defendants' defective products. When these plaintiffs joined together to sue in Missouri, Defendants argued that the Court lacked personal jurisdiction over the Plaintiffs who were from other states. These courts all rejected this argument. In Gracey, the Court explained why personal jurisdiction was proper:

> According to defendants, no federal or state court in Missouri can exercise personal jurisdiction over defendants and comport with due process with respect to the out-of-state plaintiffs' claims. The parties do not dispute, however, that Missouri courts have personal jurisdiction over defendants with respect to the in-state plaintiffs' claims. Missouri courts, thus, may properly exercise personal jurisdiction over defendants with respect to this cause of action as a whole arising out of or related to its contacts and conduct in Missouri. See Shaffer v. Heitner, 433 U.S. 186, 204 (1977) (stating that the proper focus of the due process inquiry for the exercise of personal jurisdiction is "the relationship among the defendant, the forum, and the litigation").

Gracey, 2015 WL 2066242 at n. 2.

The putative class members who reside in each of the other eight states listed in the Amended Complaint have claims that could be properly joined to those brought by the Illinois plaintiffs. Defendants make no argument that this Court does not have personal jurisdiction over them with respect to Mr. deMedicis. Because personal jurisdiction is based not on the citizenship of the Plaintiff, but on the relationship among the Defendant, the forum, and the litigation, this Court can constitutionally exercise jurisdiction over all claims in this lawsuit, including those in Count III.

### IV. CONCLUSION

Defendants lied about the origin of their products. Under the FTC guidelines and Illinois law, their representation that the product is made in the USA is false because an essential ingredient has a foreign source. The Amended Complaint has plausibly alleged all elements of Plaintiff's claims with a particularity sufficient to satisfy both Rule 12(b)(6) and Rule 9(b). Therefore, Defendants' motion to dismiss should be denied.

Respectfully Submitted,

/s/ John E. Norris
John E. Norris
One of the Attorneys for Plaintiff

OF COUNSEL:
DAVIS & NORRIS LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com
dware@davisnorris.com
krivers@davisnorris.com

Gerald Bekkerman
Jennifer Bekkerman
BEKKERMAN LAW OFFICES, LLC
444 N. Michigan Ave. #1000
Chicago, Illinois 60611
Telephone: 312.254.7399
gbekkerman@bekkermanlaw.com
jbekkerman@bekkermanlaw.com

## CERTIFICATE OF SERVICE

    The undersigned attorney, hereby certifies that he served the above by filing the same using the electronic filing system, which sends notice to all parties who are currently on the Court's Electronic Mail Notice List as follows on October 25, 2016:

Kirstin B. Ives
FALKENBERG FIEWEGER & IVES LLP
30 N LaSalle Street, Suite 4020
Chicago, IL 60602
312-566-4803 (Phone)
312-566-4810 (Fax)
kbi@ffilaw.com

Thomas Holderness
NC State Bar No. 17457
tholderness@rbh.com
ROBINSON, BRADSHAW & HINSON, P.A.

101 N. Tryon St. Suite 1900
Charlotte, NC 28246
Telephone: 704.3778345
Facsimile: 704.373.3945
tholderness@rbh.com

      The undersigned also states that a copy of the foregoing has been delivered to the table outside of the office of the Courtroom Deputy (Room 1204) within one (1) business day after e-filing.

                              /s/_John E. Norris
                              John E. Norris